**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**UNITED STATES OF AMERICA,**

       **Plaintiff,**

 vs.              **8:12-cr-484**
                   **(MAD)**

**TRUDIAN SIMMONDS,**

       **Defendant.**
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| **OFFICE OF THE UNITED STATES ATTORNEY** | **EDWARD P. GROGAN, ESQ.** AUSA |
| James T. Foley U.S. Courthouse | |
| 445 Broadway | |
| Albany, New York 12207 | |
| Attorneys for the United States | |
| | |
| **OFFICE OF THE FEDERAL PUBLIC DEFENDER** | **PAUL J. EVANGELISTA, ESQ** AFPD |
| 39 North Pearl Street | |
| 5th Floor | |
| Albany, New York 12207 | |
| Attorneys for Defendant | |

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

On May 22, 2013, a jury returned a verdict of guilty, finding that Defendant Trudian Simmonds had transported an illegal alien in violation of 8 U.S.C. § 1324(a)(1)(A)(ii). Currently before the Court are Defendant's motions for a judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure or, in the alternative, a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure. *See* Dkt. No. 66.

### II. BACKGROUND

On October 17, 2012, a grand jury returned a one-count indictment charging Defendant with a violation of 8 U.S.C. § 1324(a)(1)(A)(ii):

> **Count 1**
> Transporting Alien
>
> That on or about August 9, 2012, in Franklin County in the Northern District of New York, the defendant, TRUDIAN SIMMONDS, knowing and in reckless disregard of the fact that an alien, believed to be named Rohan Andy Gayle, had come to, entered, and remained in the United States in violation of law, did transport and move and attempted to transport and move such alien within the United States by means of vehicular transportation, in furtherance of such violation of law.

Dkt. No. 18.

On August 9, 2012, Defendant applied for admission to the United States at the Port of Entry in Massena, New York ("Massena POE"). Defendant was driving a red Honda with Massachusetts license plates. During the primary inspection, United States Customs and Border Patrol officers ("CBP officers") observed that Defendant had entered the United States from Canada on several prior occasions, but never at the Massena POE, and that she appeared nervous. Defendant was referred for a secondary inspection, pursuant to CBP policy that required verification of her lawful permanent resident card. *See* Transcript of Jury Trial ("Tr."), Vol. I, at 19-20.

During secondary inspection, Defendant stated to CBP officers that she was traveling from Toronto, Ontario to her home in Springfield, Massachusetts to see her daughter, that she would not be making any stops along the way, and that everything in the vehicle belonged to her. *See id.*, Vol. II, at 36-38. CBP officers again observed that Defendant was nervous. *See id.* at 57. CBP officers then searched Defendant's vehicle and discovered two bags in the trunk containing male clothing. One of the bags also contained a Jamaican passport issued to a male named Rohan

2

Gayle. *See id.* at 41-43. CBP officers conducted an investigation and determined that Mr. Gayle would not be admissible into the United States, and confirmed that Defendant had not previously entered the United States through the Massena POE. *See id.* at 47, 54.

Suspecting that Defendant was involved in illegal alien smuggling, CBP officers permitted Defendant to enter the United States and followed her vehicle from the Massena POE. *See id.* at 105-107. A Homeland Security Investigations Special Agent observed Defendant's vehicle drive to the Three Feathers Casino, which was located on the Akwesasne Indian Reservation, several miles from the Massena POE. The Agent testified that Defendant exited the vehicle and approached the trunk, then returned to the front of the vehicle. Shortly thereafter, the Agent observed a four-wheeled all-terrain vehicle ("ATV") approach Defendant's vehicle. An individual who arrived on the ATV then entered the front passenger-side of Defendant's vehicle. *See id.* at 109-110.

CBP officers continued to observe and trail Defendant's vehicle. When Defendant's vehicle passed one CBP officer, the officer observed only the driver, Defendant, and no passenger. The CBP officer then stopped Defendant's vehicle, and as he approached he observed an individual (Mr. Gayle), who was reclined in the passenger seat. *See id.* at 145-147.

During the stop, CBP officers requested identification; Defendant produced a Canadian driver's license (which she had not shown to CBP officers at the Massena POE) and Mr. Gayle claimed he did not have identification. Mr. Gayle thereafter stated that, in order to enter the United States, he had "come across the water." *See id.* at 148-150. CBP officers located the two bags containing male clothing in the back seat of Defendant's vehicle, but could not locate Mr. Gayle's passport. CBP officers asked Defendant to locate passport for them, after which she

3

reached into one of the bags and retrieved Mr. Gayle's passport. *See id.* at 152-53, 188. Defendant also appeared nervous during the stop. *See id.* at 150, 159.

Mr. Gayle testified that he arrived at the Three Feathers Casino parking lot on an ATV, and when he entered Defendant's vehicle he informed her that he had crossed the border by boat. *See* Transcript of September 6, 2012 Deposition of Rohan Gayle, at 47. Mr. Gayle also testified that he and the Defendant were cousins and also had a relationship as boyfriend and girlfriend. *See id.* at 62.

Following the stop, both Defendant and Mr. Gayle were placed under arrest. During a post-arrest interview, Defendant claimed that a cousin named Dave, whose last name she did not recall, gave her the bags containing male clothing that were initially found in the trunk of her vehicle during secondary inspection and later found in the back seat of the vehicle during the traffic stop. *See* Tr., Vol. III, at 15. The officer CBP who conducted the interview found that Defendant was initially cooperative, but that her demeanor changed and she became evasive as the interview progressed. *See id.* at 7, 13-17, 19. The officer testified that Defendant had initially entered Canada at a POE near Buffalo and returned through the Massena POE, which was out of her way and was not the most direct route from Toronto to Massachusetts. *See id.* at 17, 45.

On May 22, 2013, after a three-day trial, the jury found Defendant guilty of the sole count of the Indictment. *See* Dkt. No. 59.

### III. DISCUSSION

**A.   Defendant's Motion for Judgment of Acquittal**

Federal Rule of Criminal Procedure 29 provides that, after a jury verdict, "the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a); Fed. R. Crim. P. 29(c)(1) (allowing

4

for the defendant to move for acquittal after the verdict is returned).  "A defendant challenging the sufficiency of the evidence supporting a conviction faces a 'heavy burden.'"  *United States v. Glenn*, 312 F.3d 58, 63 (2d Cir. 2002) (quoting *United States v. Matthews*, 20 F.3d 538, 548 (2d Cir. 1994)).  A court may overturn a conviction on this basis "only if, after viewing the evidence in the light most favorable to the Government and drawing all reasonable inferences in its favor," it finds that "'no rational trier of fact' could have concluded that the Government met its burden of proof."  *Id.* (quoting *United States v. Morrison*, 153 F.3d 34, 49 (2d Cir. 1998)).

In her Rule 29 motion, Defendant asserts that the Government presented insufficient evidence to allow a rational jury to find her guilty with respect to two elements of the offense charged in Count One of the Indictment.

Count One of the Indictment charged Defendant with violating 8 U.S.C. § 1324(a)(1)(A)(ii) by transporting Mr. Gayle within the United States following his illegal entry.  Section 1324 of Title 8 of the United States Code, Bringing in and harboring certain aliens, provides, in relevant part:

> (1)(A) Any person who--
> [ ]
> (ii) knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, transports, or moves or attempts to transport or move such alien within the United States by means of transportation or otherwise, in furtherance of such violation of law[.]

8 U.S.C. § 1324(a)(1)(A)(ii).  Under this provision, the government must prove each of the following elements beyond a reasonable doubt:

> (1) the alien was in the United States in violation of the law;
> (2) the defendant knew, or acted in reckless disregard of the fact, that the person was an alien who had come to, entered, or remained in the United States in violation of the law;
> (3) the defendant transported the alien within the United States; and

5

> (4) the defendant acted willfully in furtherance of the alien's violation of law.

Defendant alleges that the government failed to meet its burden to show that she "knew that Gayle was in the United States illegally and that she intended to transport him in furtherance of that illegality." Dkt. No. 66 at 5.

Specifically, Defendant argues that "[t]he government's evidence, provided no evidence or testimony that Ms. Simmonds was aware that Mr. Gayle could not legally enter and remain in the United States. [ ] Without some proof of Simmons [sic] knowledge of Gayle's prohibited status and illegal entry, she could not be said to be acting in furtherance of that illegal status." *Id.* at 5-6.

Contrary to Defendant's assertions, the Government presented sufficient evidence for a rational jury to conclude that Defendant knew, *or acted in reckless disregard of the fact*, that Mr. Gayle could not legally enter the United States and that her transportation of him once inside the United States was in furtherance of his illegal entry. At trial, the government presented evidence that Defendant and Mr. Gayle had a personal relationship and that they had spent several weeks together in Toronto prior to their arrest. Defendant had initially entered Canada through a POE near Buffalo, but was returning through the Massena POE. The Massena POE was out of her way and would add substantial travel time to her trip, which contrasted with her claims that she was in a hurry to return to Springfield, Massachusetts to see her daughter.

The government presented evidence showing that Defendant went to the Three Feathers Casino after she entered the United States, retrieved the bags containing Mr. Gayle's clothing and passport from the trunk, and shortly thereafter rendezvoused with Mr. Gayle. This contradicted Defendant's prior statement to CBP officers during secondary inspection that she did not plan on making any steps on her way to Massachusetts. Mr. Gayle himself testified that after he entered

Defendant's vehicle, he informed her that he had crossed the border by boat.[1] Although Mr. Gayle testified that Defendant was unaware of his inadmissibility into the United States and did not know of his intention to enter illegally, the jury was entitled to discredit this testimony in light of the testimony of the government's witnesses.

The government also presented evidence that Defendant drove away from the Three Feathers Casino with Mr. Gayle in the passenger seat. While driving away from the border area, Mr. Gayle reclined in his seat, thus obscuring him from the view of those outside the vehicle. Following the vehicle stop, when CBP officers asked Defendant to locate Mr. Gayle's passport, she reached into one of the bags and retrieved it for them.

The evidence was clearly sufficient for the jury to find that Defendant knew or acted in reckless disregard of the fact that Mr. Gayle was not legally permitted to enter the United States, and that she acted willfully in furtherance of Mr. Gayle's illegal entry. The government offered a considerable amount of credible testimony that allowed the jury to return a guilty verdict. Further, the testimony and evidence that the Government introduced allowed the jury to find Mr. Gayle's testimony incredible.

Defendant directs the Court's attention to the case *United States v. Moreno-Duque*, 718 F.Supp. 254 (D. Vt. 1989), in which the United States District Court for the District of Vermont granted a defendant's Rule 29 motion after a jury found the defendant guilty of a violation of the predecessor to the same provision with which Defendant was charged here. In *Moreno-Duque*, the court found that the defendant's transportation of aliens whom he knew to be illegal was an

---

[1] A CBP officer testified that it is illegal to cross into the United States from Canada between two ports of entry. *See* Tr., Vol II, at 31. Thus, it was reasonable for the jury to infer that Gayle's entry was illegal, and that Defendant knew or acted in reckless disregard of Gayle's illegal entry.

7

incident of their employment. The court found that violation of the statute "requires proof that the purpose of the transportation was to further the violation of law. In other words, the government must prove that the defendant specifically intended by means of the transportation to advance or assist the alien's violation of law, not merely that the effect of the transportation was to allow the alien to remain in the United States." *United States v. Moreno-Duque*, 718 F.Supp. 254, 259 (D. Vt. 1989). Here, unlike in *Moreno-Duque*, Defendant's transportation of Mr. Gayle was not a mere incident of his employment. Instead, Mr. Gayle had illegally entered the United States on the night of August 9, 2013, the same night that Defendant crossed at the Massena POE. Thereafter, Mr. Gayle sent text messages to Defendant with instructions to meet him at the Three Feathers Casino. Defendant retrieved the bags in her trunk containing Mr. Gayle's clothing and passport. When Mr. Gayle arrived at the Three Feathers Casino on an ATV, he entered Defendant's vehicle, informed her that he had not been admitted through the Massena POE but had come across by boat, and reclined his seat in such a way as to avoid detection. Defendant and Mr. Gayle then departed in an attempt to move away from the border area. The government's proof was sufficient to prove that Defendant's intent was to assist in Mr. Gayle's illegal entry.

Defendant also directs the Court's attention to the case *United States v. 1982 Ford Pick-up*, 873 F.2d 947 (6th Cir. 1989), in which the Sixth Circuit Court of Appeals reversed the district court's grant of summary judgment of civil forfeiture and concluded that the illegal aliens were not transported "in furtherance of such violation of law." *Id.* at 948 (quoting statute). The court there ruled that the government must prove that a defendant willfully transported an illegal alien with the specific intent of supporting the alien's illegal presence, and that the government had failed to do so in that case. The court found that the defendants had made no attempt to hide their passengers or otherwise conceal that they were illegal aliens, and that the aliens were friends,

relatives, and former co-workers who sought transportation to find employment. Since defendant's purpose was to promote the alien's well-being and not to escape prosecution or otherwise evade the law, the government could not obtain forfeiture of the vehicle used to transport the aliens. *Id.* at 951-52.

The facts presented in the instant matter are clearly distinguishable from *1982 Ford Pick-up*. First, unlike in *1982 Ford Pick-up*, the Defendant here did attempt to conceal the illegal alien, Mr. Gayle. Defendant also attempted to secret Mr. Gayle's personal effects and identification in the trunk of her vehicle while he illegally crossed the border. Then, Defendant met up with Mr. Gayle once they had both crossed the border and she attempted to transport him away from the border area undetected – Mr. Gayle reclined in his seat so that he could not be seen from outside the vehicle. Second, although Mr. Gayle was a friend and relative of Defendant, her purpose of transporting him was not simply to promote his well-being, but was to move him away from the border area so as to evade prosecution. Thus, the government met its burden of showing that Defendant's transportation of Mr. Gayle was in furtherance of his unlawful presence.

The Court concludes that, based on the evidence, Defendant has failed to establish that no rational trier of fact would have found her guilty of Count 1 of the Indictment. Contrary to Defendant's argument, the government's proof was not "wholly deficient to prove that Ms. Simmonds knew that Gayle could not enter the United States legally[, and] that Simmonds acted in furtherance of Gayle's illegal status." Dkt. No. 66 at 5. Rather, the government met its burden to support the guilty verdict. Accordingly, the Court denies Defendant's motion for a judgment of acquittal.

**B.     Defendant's Motion for a New Trial**

9

Federal Rule of Criminal Procedure 33(a) provides, in pertinent part, that, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a); *see also United States v. Ferguson*, 246 F.3d 129, 133 (2d Cir. 2001) (quoting Rule 33). "A motion for a new trial on the ground that the verdict is contrary to the weight of the evidence raises issues different from those involved in a motion for a judgment of acquittal based on the sufficiency of the evidence." *United States v. Nalbandian*, No. 3:08-CR-60, 2009 WL 5218056, *5 (D. Conn. Dec. 29, 2009) (citing *United States v. Martinez*, 763 F.2d 1297, 1312 (11th Cir. 1985)). When reviewing a Rule 33 motion, a district court has "broad discretion [ ] to set aside a jury verdict and order a new trial to avert a perceived miscarriage of justice." *United States v. Sanchez*, 969 F.2d 1409, 1413 (2d Cir. 1992). Though a district court is entitled to "'weigh the evidence and in so doing evaluate for itself the credibility of the witnesses,' [ ] it 'must strike a balance between weighing the evidence and credibility of witnesses and not wholly usurping the role of the jury.'" *United States v. Triumph Capital Group, Inc.*, 544 F.3d 149, 159 (2d Cir. 2008) (internal quotations and citations omitted).

Accordingly, a court should exercise its discretion under Rule 33 with caution and with due respect for the jury's verdict. *See id.* Therefore, as the Second Circuit has explained,

> [t]he ultimate test on a Rule 33 motion is whether letting a guilty verdict stand would be a manifest injustice. The trial court must be satisfied that "competent, satisfactory and sufficient evidence" in the record supports the jury verdict. The district court must examine the entire case, take into account all facts and circumstances, and make an objective evaluation. "There must be a real concern that an innocent person may have been convicted." Generally, the trial court has broader discretion to grant a new trial under Rule 33 than to grant a motion for acquittal under Rule 29, but it nonetheless must exercise the Rule 33 authority "sparingly" and in "the most extraordinary circumstances."

*Ferguson*, 246 F.3d at 134 (citations omitted).

10

For the same reasons set forth above with respect to Defendant's motion for a judgment of acquittal, the Court declines to disturb the jury's verdict and denies Defendant's motion for a new trial. Defendant attempts to cast doubt on the credibility of the government witnesses by way of minor inconsistencies in their testimony. It is the province of the jury to weight the credibility of these witnesses and the Court finds that the jury's determinations in that respect were not unreasonable. Moreover, the only other witness who testified regarding Defendant's knowledge and intent was Mr. Gayle. As discussed above, the jury was entitled to discredit Mr. Gayle's testimony.

Based on the foregoing, the Court finds that "'competent, satisfactory and sufficient evidence' in the record supports the jury verdict," *Ferguson*, 246 F.3d at 134 (citation omitted); and therefore, the Court denies Defendant's motion for a new trial.

### IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant's post-trial motions for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29(c) or, in the alternative, for a new trial pursuant to Federal Rule of Criminal Procedure 33(a) are **DENIED**.

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: November 13, 2013
      Albany, New York

Mae A. D'Agostino
U.S. District Judge

11